**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

ANDRES GOMEZ,

      Plaintiff,

vs.

DASH BOUTIQUE, INC.

      Defendant

---

**COMPLAINT**

---

COMES NOW Plaintiff Andres Gomez, by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Dash Boutique, Inc. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the Electronic Communications Privacy Act 18 U.S.C. §2510 et. al., and the tort of trespass, and alleges as follows:

<u>**INTRODUCTORY STATEMENT**</u>

1.      Plaintiff Andres Gomez brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Dash Boutique, Inc.'s website www.shopdashonline.com (which is an extension of its retail boutiques) throughout the United States of America, where the groundbreaking "American with Disabilities Act" has been the law of the land since 1992.

1

2.      Companies operating on the internet twenty years (20) after consumers started using the internet to better their lives, business have to make decisions on whether to be inclusive, or to exclude people.

3.      When the owners and operators of a website do not take the steps necessary to notice people of their website's limitations or to provide programming that works (interfaces) with universal screens readers[1], they are not only marginalizing the disabled community, but they are actively excluding these same disabled people from their business, which in fact segregates the disabled into being non-participants, ie: second-class citizens.

4.      When websites are not fully accessible to all, it's essentially a bad business practice, a detriment to their stakeholders, the disabled, and society.

5.      The vision and blind population is expected to double by 2050, it is essential that low vision and blind individuals are not excluded from society and segregated in area of web commerce.

6.      This case arises out of the fact that Defendant Dash Boutique, Inc. has operated its business in a manner and way that completely excludes individuals with disabilities who are visually impaired from enjoying and accessing the Defendant's website www.shopdashonline.com.

7.      Defendant Dash Boutique, Inc. (also referenced as "Defendant") owns and operates places of public accommodation which are upscale boutiques under the brand name "Dash." Dash boutiques offer for sale to the general public high-end women's

---

[1] A "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to provide information about icons, menus, dialogue boxes, files and folders.

designer brands, active-wear (sport bras, leggings, and mesh tanks), jewelry and accessories such as belts, cellphone cases, hats/beanies, towels, socks, and sunglass. Heretofore, referenced as "Dash brand merchandise".

8.     The Defendant offers an adjunct website www.shopdashonline.com ("website") which is directly connected to its Dash  boutiques since the website provides a site locator to the Defendant's Dash physical boutique locations (places of public accommodation). Thus, www.shopdashonline.com ("website") has a true nexus to the Defendant's Dash boutiques.

9.     This complaint seeks declaratory and injunctive relief to correct the Defendant's policies and practices, to include measures necessary to ensure compliance with federal law, to include monitoring of such measures, and to update and remove accessibility barriers on the Defendant's www.shopdashonline.com website so that the Plaintiff (and other individuals who are visually impaired and who cannot access and comprehend the websites that operate therein without the aid of assistive technology) will be able to independently and privately use the Defendant's www.shopdashonline.com website. This complaint also seeks compensatory damages to compensate the Plaintiff for having been subjected to unlawful discrimination.

## JURISDICTION & VENUE

10.     This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and the Electronic Communications Privacy Act 18 U.S.C. §2510 et. al. and supplemental jurisdiction over the related state law claim pursuant to 28 U.S.C. §1367.

11.     This is also an action for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

12.     This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet website for services to order Dash merchandise online.

13.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting, business within the within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, one of the Defendant's boutiques is located in the district (on Collins Avenue on Miami Beach, Florida). In addition, the Defendant is authorized to conduct business within the state of Florida as a foreign corporation.

14.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

### Andres Gomez

15.     Plaintiff Andres Gomez (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

16.     Plaintiff Gomez is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Plaintiff Gomez suffers from

macular degeneration and therefore is substantially limited in performing one or more major life activities, including but not limited to accurately visualizing his world, adequately traversing obstacles and walking without assistance.

17.     Plaintiff Gomez cannot use the computer without the assistance of screen reader software.

**Dash Boutique, Inc.**

18.     Defendant Dash Boutique, Inc. (also referenced as Defendant) is the owner and operator of a three boutiques under the brand name "Dash," which are all located in trendy areas of Los Angeles, New York, and Miami.  Dash Boutique, Inc. was founded by Kourtney, Khloé, and Kim Kardashian in 2006 and has capitalized on the cult popularity of the reality show Keeping Up With the Kardashians, and focuses on selling high-end clothing and accessories.

## FACTS

19.     The Defendant is defined as a "public accommodation" because it is an entity which owns and operates, a chain of retail establishments (Dash boutiques), each of which is a "Place of Public Accommodation" which is defined as "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2). Each Dash boutique are a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E) and 28 C.F.R. Part 36. The Defendant's Dash retail boutiques are also referenced throughout as "place(s) of public accommodation," "Dash boutique(s)."

20.     One     of     the     functions     of     the     Defendant's     website www.shopdashonline.com ("website") is to provide the general public information on the various locations of the Defendant's Dash boutiques throughout the United States and within the state of Florida.

21.     The Defendant owns and/or operates three Dash boutiques throughout the United  States,  one  of  which  is  located  in  Florida.  The  Defendant's  website www.shopdashonline.com services the Dash boutiques (physical sales locations) and markets and advertises the Dash brand merchandise available for sale exclusively at the Dash boutiques, where Dash brand merchandise is available for sale to the general public.

22.     Since  the  Defendant's  website  allows  the  general  public  the  ability  to locate the Dash boutique locations, the website is an extension of the physical sales establishments.  Hence  there  is  a  direct  nexus  between  the  www.shopdashonline.com website and the Defendant's Dash boutiques, hence the website is characterized as a place of public accommodation; 42 U.S.C. § 12181(7)(E).

23.     The  website  also  allows  the  general  public  access  to  purchase  online  a wide range of Dash brand merchandise which is available exclusively at Dash boutiques or online. As such, the website is a sales establishment, which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(E) and must comply with the ADA. This means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public.  As such, the Defendant has subjected  itself  and  the  website  it  has  created  and  maintains,  to  the  Americans  with Disabilities Act ("ADA").[2]

---

[2] "The Department of Justice has long taken the position that both State and local government

24.     Plaintiff Andres Gomez is a customer who is interested in purchasing Dash brand merchandise which is offered through the Defendant's Dash boutiques and through its website www.shopdashonline.com.

25.     The opportunity to shop for clothes designed by the Kardashians available exclusively at Dash boutiques or online from his home is an important accommodation for the Plaintiff, because traveling outside the home as a blind individual is a difficult and frightening experience.

26.     Plaintiff Andres Gomez frequently utilizes the internet. In order to comprehend   information available on the internet and access/comprehend websites, Plaintiff Andres Gomez uses commercially available screen reader software to interface with the various websites.

27.     In order to comprehend the Defendant's website and to become informed of the Defendant's Dash brand merchandise (which other members of the general public may order online), Plaintiff Andres Gomez must use screen reader software.

28.     Buying and ordering clothing and accessories online and having those purchases delivered to one's home is a highly sought after/an important/highly valued accommodation that helps improve the lives of vision impaired people such as the Plaintiff (and thousands of others like him), and helps them integrate and participate in society.

---

Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

29.     Like most of us, Plaintiff Andres Gomez accesses several websites at a time to compare merchandise and prices. When shopping online, Plaintiff Gomez may look at several dozen websites to compare features, styles, prices, and locations.

30.      Plaintiff Andres Gomez is interested in purchasing exclusive Kardashian designed trendy clothing and accessories.  Plaintiff Andres Gomez had heard about the Dash boutique on Collins Avenue (Miami Beach Florida) and decided to shop online to learn about the Dash brand merchandise through its website, www.shopdashonline.com.

31.     On several occasions during the month of  July 2016 and in September 2016, the Plaintiff attempted to utilize the Defendant's website to educate himself as to the Dash brand merchandise with the intent of making a purchase. The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which is the most popular screen reader software utilized worldwide as it allows individuals who are visually impaired to comprehend information available on the internet and access websites.

32.     However, the Defendant's website did not integrate with Plaintiff's screen reader software, nor was there any function within Defendant's website to permit access for visually impaired through other means.

33.     The Defendant's website contains access barriers that prevent free and full use by visually impaired individuals using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: the lack of alt-text on graphics, inaccessible forms, the lack of adequate prompting and labeling; the denial of keyboard access; and the requirement that transactions be performed solely with a mouse.

34.     The Defendant's website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate and accurately fill-out online forms to purchase Dash brand merchandise and/or gift cards. On a shopping website such as www.shopdashonline.com, these forms include search fields to locate products (buy gift plastic gift card or a digital gift card), fields that specify the number of items desired, and fields used to fill-out personal information, including address and credit card information. Due to the lack of adequate labeling, visually impaired customers cannot easily make purchases or inquiries as to Dash brand products, nor can they enter their personal identification and financial information with confidence and security.

35.     The Plaintiff attempted to locate any type of *Accessibility Notice*, any link[3], or any information relating to the website's future accessibility plans or information regarding contacting the Defendant to alert the Defendant to the inaccessibility of its website www.shopdashonline.com, but was unable to do so, because no such link or notice was provided[4].

36.     The fact that Plaintiff Gomez could not interface with the Defendant's www.shopdashonline.com website left him feeling excluded, as he is/was unable to participate in the shopping experience online at the www.shopdashonline.com website as

---

[3] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

[4] Other online retailers have taken steps  to notice and inform disabled users of their website programming plans and have direct email / toll free numbers to enable contact with the retailer e.g.
http://www.starbucks.com/about-us/company-information/online-policies/web-accessibility
http://www.tiffany.com/Service/Accessibility.aspx?isMenu=1&
http://www.potbelly.com/Company/Accessibility.aspx
https://www.dennys.com/accessibility/

experienced by the general public, 26 years after the Title III of the ADA was enacted and which promised to remove such barriers.

37.    Plaintiff Andres Gomez and others of low vision want to patronize the www.shopdashonline.com website, but are unable to do so due to their vision impairment because the website has not been designed to accommodate low vision people.  Thus, the Plaintiff and others will continue to suffer irreparable injury from the Defendant's intentional acts, policies, and practices set forth herein unless enjoined by this Court.

38.    The Defendant's website did\does not offer an adequate system to permit a disabled person with a visual impairment (who requires screen reader software) to comprehend its website in an effective manner.

39.    The Defendant's website is\was not designed and programmed to interface with commercially available screen reader software for disabled individuals who are visually impaired in the same manner as the website is offered to the general public.

40.    The Defendant's website is\was so poorly functional for visually impaired individuals who require screen reader software, that any utilization of the website contains barriers that prevent full and equal use (of the website) by individuals with disabilities who are visually impaired.

41.    On information and belief, the Defendant has not initiated a Web Accessibility Policy to insure full and equal use of the Dash website by individuals with disabilities.

42.    On information and belief, the Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its website by individuals with disabilities.

43.     On information and belief, the Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of its website by individuals with disabilities.

44.     On information and belief, the Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

45.     On information and belief, the Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

46.     On information and belief, the Defendant has not instituted a Bug Fix Priority Policy.

47.     On information and belief, the Defendant has not instituted an Automated Web Accessibility Testing program.

48.     On information and belief, the Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

49.     On information and belief, the Defendant has not created and instituted on its website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its website, Applications, and Digital Assets accessible to the visually impaired community.

50.     On information and belief, the Defendant's website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[5].

51.     On information and belief, the Defendant does not have a Web Accessibility Policy.

52.     On information and belief, the Defendant has not disclosed to the public any intended 1) audits, 2) changes, or 3) lawsuits to correct the inaccessibility of their website vis-a-vis disabled individuals who are visually impaired who want the safety and privacy of purchasing Dash merchandise or gift cards online from their homes like other Americans.

53.     Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided by and through its website www.shopdashonline.com.

54.     Under the ADA, all places of public accommodation must ensure that the disabled individuals enjoy full and equal enjoyment of its goods and services by making reasonable modifications to its services and sales policies and procedures.

55.     Public Accommodations that use the Internet for communications regarding their programs, goods or services, must offer those communications through adequate accessible means as well.

56.     For many individuals with disabilities who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society with safety and in dealing with terms of their disability.

---

[5] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

57.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the Defendant's website, where they have a direct connection.

58.     On information and belief, the Defendant is aware of these common access barriers within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend its website to become informed of its Dash brand merchandise available in its Dash boutiques and available for purchase online.

59.     On information and belief, the Defendant is aware of need to provide full access to all visitors of the Website.[6]

60.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

61.     Such barriers result in punishment and isolation of blind and low vision from the rest of society.

62.     Thus, the Defendant has refused to make its website accessible to individuals with disabilities who are visually impaired.

63.     According to Statistic Brain Research Institute[7], in 2014, online sales in the United States exceeded $304 Billion U.S. Dollars. On average, 87% of Americans that have browsed online boutiques such as www.shopdashonline.com and  have made an

---

[6] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (www.internetretailer.com/2016/04/01/web-accessibility-what-e-retailers-need-know) (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance)
[7] US Commerce Department, Forrester Research date: October 9, 2014, See
http://www.statisticbrain.com/total-online-sales/

internet purchase, while 57% of Americans that have browsed online boutiques have made a purchase multiple times.

64.    According to the National Federation for the Blind[8], there are 6,670,300 Americans with visual disabilities.

65.    The National Federation for the Blind has also reported that there are over half a million people with visual disabilities living within the state of Florida.

66.    The Defendant has failed to provide any mechanism by which to adequately serve visually impaired individuals such as the Plaintiff. The Defendant is operating in violation of Plaintiff Andres Gomez's rights as protected by the ADA and is entitled to injunctive relief. 42 U.S.C. §12188.

67.    Plaintiff Andres Gomez has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means to secure adequate redress from the Defendant's unlawful and discriminatory practices.

68.    Plaintiff Andres Gomez and others will continue to suffer irreparable injury from Defendant's intentional acts, policies, and practices set forth herein unless enjoined by the court.

69.    Notice to the Defendants is not required as a result of the Defendant's failure to cure the violations. Enforcement of the Plaintiff's rights is right and just pursuant to 28 U.S.C. §§s 2201, 2202.

---

[8] Statistics for 2012, see http://www.NFB.org/blindness-statistics

70.     The Plaintiff has retained the law offices of Scott R. Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## FACTUAL ALLEGATIONS SPECIFIC TO PRIVACY AND TRESPASS

71.     Plaintiff Andres Gomez utilizes his personal computer to access websites such as the Defendant's www.shopdashonline.com website.     Plaintiff Gomez uses his personal computer as a method of conveyance of his personal information. As such, Plaintiff Gomez boutiques his personal information and retains his browsing history on his personal computer.

72.     Throughout the www.shopdashonline.com website, the Defendant has programed cookies to collect personal information on the website's users (such as the Plaintiff).

73.     The Defendant's *Privacy Policy*, informs the website user that any individual who accesses the website and commences to shop on that website is subject to having his/her personal information stored by the Defendant and also conveyed to third parties. According to the Defendant's website, the information collected is used for targeted marketing and "statistical services" (without describing such statistical services). The *Privacy Policy* also states that the user's personal information would be conveyed to third parties if the Defendant chose to sell its assets (thus identifying the website user's personal information as an asset), service and support providers (without so naming the service providers) and potentially other third parties (without so naming the third parties), ostensibly for use in conducting marketing research.

74.     The Plaintiff is unable to comprehend the Defendant's *Privacy Policy* (including Cookie Notice) because of the inaccessibility of the website.  The Plaintiff has/had no choice, and therefore no knowledge, of the Defendant's policy toward collection of the website user's browsing history and analytics placed on the user's computer.

75.     As such, the Defendant's www.shopdashonline.com website has committed a trespass against the Plaintiff since the website uses software analytics to farm the Plaintiff's personal data stored on his and farm the personal browsing history of the Plaintiff as stored on the Plaintiff's computer.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

76.     Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-70 above.

77.     The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities[9].

78.     As a result of the inaccessibility of the Defendant's website and by the barriers to access in its website (when removal of those barriers is readily achievable), the Defendant has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that the Defendant has made available to

---

[9] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

the general public on its website www.shopdashonline.com, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

79.    Pursuant to 42 U.S.C. §12181(7)(E), www.shopdashonline.com (the Defendant's website) is a *place of public accommodation* under the ADA because it provides the general public with the ability to purchase Dash brand merchandise online and have those items available for pick up or delivered to one's home. Further, the www.shopdashonline.com website also serves to augment the Defendant's Dash boutiques by providing the general public information on the locations of Dash boutiques and to educate the general public as to the line of Dash brand merchandise sold on www.shopdashonline.com and through its Dash boutiques. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

80.    Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

81.    In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as

may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

82.    As such, the Defendant's website must be in compliance with the ADA. However, the Defendant's website is\was not in compliance with the ADA.  Plaintiff Andres Gomez has suffered an injury in fact because of the website's (and Defendant's) non-compliance with the ADA.

83.    Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible.

84.    A sampling review of just part of the Defendant's website revealed that the website is not functional for users who are visually impaired.  The Defendant's website contains several types of PETs (easily identifiable and correctable), which occur throughout the website such as:

1)  The language of the document is not identified,
2)  Image alternative text is not present, and
3)  A form control does not have a corresponding label.

85.    Further, the Defendant's website contains various types of PATs (prone to making the website inaccessible), which occur throughout the website, such as:

1)  Alternative text is likely insufficient or contains extraneous information,
2)  An event handler is present that may not be accessible,
3)  A heading level is skipped,

4)  Flash content is present,
5)  Adjacent links go to the same URL,
6)  A link contains no text, and
7)  Alternative text is likely insufficient or contains extraneous information.

86.     More violations may be present on other pages of the website, and they

will be determined and proven through the discovery process.

87.     Further, the Defendant's website did\does not offer include the universal

symbol for the disabled[10] which would permit disabled individuals to access the website's

accessibility information and accessibility facts.

88.     Therefore, due to the Plaintiff's disability and the Defendant's failure to

have its website adequately accessible to individuals with visual impairments, the

Plaintiff was unable to comprehend the Defendant's website.

89.     There are readily available, well established guidelines on the Internet for

making websites accessible to the blind and visually impaired. These guidelines have

been followed by other large business entities in making their websites accessible.

Examples of such guidelines include (but not limited to) adding alt-text to graphics and

ensuring that all functions can be performed using a keyboard. Incorporating the basic

components to make the Defendant's www.shopdashonline.com website accessible

would neither fundamentally alter the nature of Defendant's business nor would it result

in an undue burden to the Defendant.

90.     The Defendant has violated the ADA (and continues to violate the ADA)

by denying access to www.shopdashonline.com to individuals with disabilities who are

---

[10]  ™, or HTML "Accessibility" link for those individuals who are visually impaired

visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the www.shopdashonline.com website are ongoing.

91.     As a result of the Defendant's inadequate development and administration of www.shopdashonline.com, Plaintiff Andres Gomez is entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

92.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Andres Gomez injunctive relief; including an order to:

a) Require Defendant Dash Boutique, Inc. to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of www.shopdashonline.com to a statement as to Dash Boutique, Inc.'s policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website, and

b) Require Defendant Dash Boutique, Inc. to cease and desist discriminatory practices and if necessary to cease and desist operations of the website known as www.shopdashonline.com until the requisite modifications are made such that its website becomes equally accessible to persons with disabilities.

93.     Plaintiff Andres Gomez has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff Andres Gomez is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Dash Boutique, Inc..

## COUNT II – VIOLATIONS OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT

94.     Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–75 above.

95.     The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, ("ECPA") regulates wire and electronic communications interception and interception of oral communications. Within the meaning of 18 U.S.C. § 2511(1), it is unlawful for a person to: intentionally intercept, endeavor to intercept, or procure . . . any other person to intercept or endeavor to intercept any wire, oral, or electronic communication.

96.     The Defendant violated 18 U.S.C.§2511 by intentionally acquiring and/or intercepting (through the www.shopdashonline.com website), by device or otherwise, Plaintiff Gomez's electronic communications, *without knowledge*, consent, or authorization.

97.     The Defendant did not obtain any permission[11] from Plaintiff to install any electronic software on his computer.

98.     The Defendant did not obtain any permission[12]  from Plaintiff to install any analytic devices on his computer.

99.     The contents of data transmissions from and to Plaintiff's personal computer constitutes "electronic communications" within the meaning of 18 U.S.C. §2510.

---

[11] Implied or otherwise
[12] Implied or otherwise

100.    Plaintiff Andres Gomez is a "person whose  . . . electronic communication is intercepted . . . or intentionally used in violation of this chapter" within the meaning of 18 U.S.C. § 2520.

101.    The Defendant violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept the Plaintiff's electronic communications when the Plaintiff navigated (and attempted to comprehend) the www.shopdashonline.com website.

102.    The Defendant violated 18 U.S.C. § 2511(1)(c) by intentionally disclosing, or endeavoring to disclose, to any other person, the contents of the Plaintiff's electronic communications, knowing or having reason to know that the information was obtained through the interception of the Plaintiff's electronic communications.

103.    The Defendant violated 18 U.S.C. § 2511(1)(d) by intentionally using or endeavoring to use, the contents of the Plaintiff's electronic communications, knowing of having reason to know that the information obtained through the interception of the Plaintiff's electronic communications.

104.    The Defendant's intentional interception of these electronic communications was without the Plaintiff's knowledge, consent, or authorization and was undertaken without a facially valid court order or certification.

105.    The Defendant unlawfully accessed and used the contents of the intercepted communications. On information and belief, such use included the enhancement of the Defendant's profitability and revenue.

106.    The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2520(a) provides a civil cause of action to "any person whose wire, oral, or electronic

communications is intercepted, disclosed, or intentionally used" who is in violation of the ECPA.

107.     The Defendant is liable directly and/or vicariously for this cause of action. Plaintiff Andres Gomez therefore seek remedy as provided for by 18 U.S.C. § 2520, including such preliminary and other equitable or declaratory relief as may be appropriate and reasonable attorney's fees and other litigation costs reasonably incurred.

108.     Plaintiff Andres Gomez has additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy.

109.     Pursuant to 18 U.S.C. § 2520, Plaintiff Andres Gomez is entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 per day for each day of violation, actual and punitive damages, reasonable attorneys' fees, and Defendant's profits obtained from the above described violations. Unless restrained and enjoined, Defendant will continue to commit such acts. Plaintiff Andres Gomez's remedy at law is not adequate to compensate him for these inflicted and threatened injuries, entitling the Plaintiff to remedy including injunctive relief as provided by 18 U.S.C. § 2510.

## COUNT III – TRESPASS

110.     Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–75 above.

111.     Plaintiff Gomez's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by the Defendant on each and every date that the Plaintiff has accessed the Defendant's website. Plaintiff Gomez's personal information has suffered a trespass due to the employment of

software analytics by the Defendant which are present on the www.shopdashonline.com website which the Plaintiff has navigated.

112.    Plaintiff Gomez was unaware of the information gathering by the Defendant as outlined in its *Privacy Policy* due to his inability to comprehend the Defendant's website, which is inaccessible due to the Defendant's failure to make its website accessible for the visually impaired.

113.    The Plaintiff did not consent to the gathering of his personal information and browsing history, therefore the Defendant has committed a trespass against the Plaintiff.

114.    Common law prohibits the intentional intermeddling with personal property in possession of another which results in the depravation of the use of the personal property or impairment of the condition, quality, or usefulness of that personal property.

115.    By engaging in the acts of farming the Plaintiff's computer for data using various analytics as alleged in this action without the knowledge, authorization, and/or consent of the Plaintiff, the Defendant has dispossessed the Plaintiff from use and/or access of his computer (or parts of his computer).  Further, the acts of the Defendant have impaired the use, value and quality of the Plaintiff's computer.

116.    The Defendant's acts constituted an intentional interference with the use and enjoyment of the Plaintiff's computer.

117.    By the acts described hereinabove, the Defendant has repeatedly and persistently engaged in trespass of the Plaintiff's personal property in violation of the common law.

118.    The Defendant did knowingly, intentionally, and without the consent of the Plaintiff access the Plaintiff's property and caused injury to the Plaintiff.

119.    By virtue of the fact that the Plaintiff was unaware of the use of cookies and analytics when he navigated the Defendant's website, the Defendant engaged in deception and concealment in order to gain access to the Plaintiff's computer and personal information.

120.    The Defendant's installation, operation, and execution of  browser history sniffing codes through "cookies" has interfered and/or intermeddled with the Plaintiff's computer including by circumventing his controls designed to prevent the information collection effected by the Defendant. Such use, interference and /or intermeddling was without the consent of the Plaintiff.

121.    The Defendant's installation, operation, and execution of  browser history sniffing codes through "cookies" has impaired the condition and value of the Plaintiff's computer.

122.    The Defendant's trespass to chattels, nuisance, and interference caused real and substantial damage to the Plaintiff.

123.    As a direct and proximate result of the Defendant's trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with the Plaintiff's property the Defendant has injured and impaired on the condition and value of the Plaintiff's computer as follows:

a)      By consuming the resources of an/or degrading the performance of the Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

b)      By diminishing the use of, value, speed, capacity, and/or capability of the Plaintiff's computer;

c)      By altering and controlling the functioning of the Plaintiff's computer;

d)      By devaluing, interfering with, and/or diminishing of the Plaintiff's possessory interest in his computer;

e)      By infringing on Plaintiff's right to exclude others from his computer;

f)      By infringing on the Plaintiffs right to determine (as owner of his computer) which programs should be installed and operated on his computer;

g)      By compromising the integrity, security, and ownership of the Plaintiff's computer; and

h)      By forcing the Plaintiff to expend money time, and resources in order to remove the programs installed on his computer without notice or consent.

For all of the foregoing, the Plaintiff has no adequate remedy at law.

**WHEREFORE,** Plaintiff Andres Gomez hereby demands judgment against Defendant Dash Boutique, Inc. and request the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant Dash Boutique, Inc. has violated the Plaintiff's rights as guaranteed by the ADA and the Electronic Communications Privacy Act 18 U.S.C. §2510 et. al.;

b) The Court enter an Order granting temporary, preliminary and permanent injunction prohibiting Defendant Dash Boutique, Inc. from operating its website www.shopdashonline.com without adequate accommodation for the visually impaired community;

c) The Court enter an Order requiring Defendant Dash Boutique, Inc. to update the www.shopdashonline.com website to remove barriers in order that individuals with visual disabilities can access the website to the full extent required by the Title III of the ADA;

d) The Court enter an Order requiring Defendant Dash Boutique, Inc. to clearly display the universal disabled logo[13] within its website, wherein the logo would lead to a page which would state Dash Boutique, Inc.'s accessibility information, facts, policies, and accommodations.  A clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of its website www.shopdashonline.com;

e) The Court enter an order requiring Defendant Dash Boutique, Inc. to provide ongoing support for web accessibility by implementing a website

---

[13] 

accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

f) The Court enter an Order directing Defendant Dash Boutique, Inc. to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures to the website known as www.shopdashonline.com

g) The Court enter an Order directing Defendant Dash Boutique, Inc. to establish a policy of web accessibility and accessibility features for the website known as www.shopdashonline.com.

h) The Court to declare the Terms of Use as delineated on the website www.shopdashonline.com null and void and rescinded and not applicable to the Plaintiff;

i) The Court to declare that the privacy rights of the Plaintiff have been violated by the unwarranted and unauthorized software and analytics that have been placed on Plaintiff's computer without his consent;

j) To require the Defendant Dash Boutique, Inc. to provide reasonable notice and choice to vision impaired and low vision consumers regarding the Defendant's data collection, profiling, merger, and de-anonymization activities;

k) To require the Defendant Dash Boutique, Inc. provide the Plaintiff reasonable means to decline participation in Defendant's collection of data from and about the Plaintiff;

l) The Court to restrain, by preliminary and permanent injunction, Defendant Dash Boutique, Inc., its officers, agents, servants, employees, and attorneys, and those participating with them in active concert, from identifying the Plaintiff online, whether by personal or pseudonymous identifiers, and from monitoring, accessing, collecting, transmitting, and merging with data from other sources any information from or about the Plaintiff;

m) The Court to award damages (including statutory damages), and restitution against the Defendant for all money to which the Plaintiff is entitled in equity due to the trespass;

n) The Court to award reasonable attorney's fees, damages, all costs (including, but not limited to court costs and any expert fees), and other expenses of suit, to the Plaintiff; and

o) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 11th day of December, 2016.

Respectfully submitted,

_s/Scott Dinin_
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*